**Leighton A. Cleverly v. Elizabeth F. M. Cleverly**

[513 A.2d 612]

No. 84-445

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed June 20, 1986

*Nancy Corsones* of *Corsones & Hansen*, Rutland, and *Leighton A. Cleverly*, pro se, Dover, New Hampshire, for Plaintiff-Appellant.

*Gale, Gale, Barile & Corum*, Brattleboro, for Defendant-Appellee.

**Peck, J.** The parties were granted a divorce by the Windham Superior Court on grounds that they lived separate and apart for six consecutive months, and the resumption of marital relations was not reasonably probable. The final decree distributed the marital property, granted custody of the parties' children to the defendant, Elizabeth F.M. Cleverly, gave the plaintiff, Leighton A. Cleverly, visitation rights with certain limitations, and ordered him to pay weekly child support and maintenance. The plaintiff appealed to this Court, alleging error in each of these orders. We reverse and remand.

■■ Plaintiff first contends that the property division cannot stand as it was based upon an erroneous finding of fault. The trial court found that the sole cause of the separation was the plaintiff's fault because he abandoned the home. The court also stated that its property settlement was based on several factors, one of which was the fault of the husband. In the division of property pursuant to a divorce, the fault of the parties is one factor among many which may be considered. 15 V.S.A. § 751(b)(12); *Victor v. Victor*, 142 Vt. 126, 130, 453 A.2d 1115, 1117 (1982). One of the purposes of the statute is to "call the court's attention to the fact that the award should take into account the equities as measured in connection with the parties' conduct during coverture." *Daitchman v. Daitchman*, 145 Vt. 145, 151, 483 A.2d 270, 274 (1984). If the court's findings are supported by reasonable evidence and the findings are sufficient to support the conclusions of law, we will not interfere with the court's wide discretion; but the trial court's discretion must be tempered when the distribution reflects inadequate findings. *Emmons v. Emmons*, 141 Vt. 508, 510-11, 450 A.2d 1113, 1115 (1982) (quoting *Field v. Field*, 139 Vt. 242, 244, 427 A.2d 350, 352 (1981)).

■■ Here, the court's findings of fault and abandonment are not supported by the evidence. In *Emmons*, we considered what constitutes abandonment in connection with fault under 15 V.S.A. § 751(b)(12):

> There was no evidence that the plaintiff suddenly disappeared unannounced without being heard from for a significant period of time, or failed to maintain contact with her children, or failed to provide any necessary financial support which might be expected under the circumstances. Merely

leaving the homestead in and of itself is not sufficient to justify a finding of fault under 15 V.S.A. § 751.

*Id.* at 511, 450 A.2d at 1115. In this case, the trial court found that, prior to separation, the plaintiff and his children visited a divorced woman. Several months after the separation, he moved in with her. No evidence was presented, however, that he had an intimate relationship with her prior to separation or that she was in any way connected with the separation. Although the trial court also found the plaintiff did not give the defendant any prior warning that he wanted a divorce and was moving out, this behavior does not constitute abandonment under *Emmons.* Because the court's findings as to fault based on abandonment are erroneous, we reverse the court's division of the property. This ruling should not be construed as a holding that, as a matter of law, the post-separation conduct of parties to a divorce proceeding may never be considered by the court. See *Allen* v. *Allen,* 132 Vt. 182, 185-86, 315 A.2d 459, 462 (1974). The above ruling is based on the facts presented by the record in the case at bar.

The next question presented for review is whether the court erred in finding that the plaintiff did not contest custody. Plaintiff did not request custody in his pleadings. At trial, however, he stated that he had some interest in custody, that he would like custody, and he introduced testimony concerning his relationship with the children. The defendant did not object to his testimony. When issues not raised by the pleadings are raised by testimony during trial without objection and are tried by the implied consent of the parties, they are treated as if they had been raised by the pleadings. V.R.C.P. 15(b); *Valsangiacomo* v. *Paige & Campbell, Inc.,* 136 Vt. 278, 280, 388 A.2d 389, 391 (1978). Therefore, the finding was not correct. However, the court concluded that the best interests of the children would be served if custody was awarded to the mother. Since there was evidence on the issue from both parties, this ruling was within the discretion of the court.

Plaintiff also claims the trial court abused its discretion in its order denying visitation until he remarries. This argument is moot because the lower court subsequently struck that portion of the order. No order was made, however, as to his visitation rights with the youngest son. A visitation privilege of some sort is the right of a parent unless good cause exists to deny visitation.

*Breznick* v. *Breznick*, 127 Vt. 80, 82-83, 238 A.2d 643, 645-46 (1968). Nor should visitation be left to the convenience and discretion of the custodial parent. See *Loeb* v. *Loeb*, 120 Vt. 489, 494, 144 A.2d 825, 828 (1958). Therefore, the order concerning custody must address visitation rights with the youngest son.

The plaintiff next contends that the trial court exceeded its authority in ordering him to pay a lump sum of $80 per week for the support of his three children until the youngest child reaches the age of 18. Although we recently held "that a divorce decree which sets an undivided weekly sum to be paid for the support of two or more minor children is deemed to require payment of the entire sum until the youngest child attains majority or until the decree is otherwise prospectively modified by a court order," see *Messier* v. *Bickford*, 146 Vt. 292, 293, 501 A.2d 1192, 1192-93 (1985), that case involved a child support order issued prior to the enactment of 15 V.S.A. § 651. Section 651 refers exclusively to "the child." Subsection (d) provides that "[t]he court may order support to be continued until the child attains the age of majority or terminates secondary education, whichever is later." This statute requires an individual award for each child based upon all relevant factors. Because we reverse the child and maintenance awards on different grounds we need not decide whether the court abused its discretion in ordering weekly support payments totaling $105.

Finally, plaintiff challenges the court's order that he pay $25 a week maintenance to the defendant. The trial court stated that its award was "rehabilitative in that the alimony payments will cease when the defendant remarries or becomes self-supporting." He argues that the trial court characterized the award as rehabilitative maintenance but imposed no definite termination date when rehabilitative maintenance, by definition, has a specific, limited duration. See *Turner* v. *Turner*, 158 N.J. Super. 313, 314, 385 A.2d 1280, 1280 (1978).

Under 15 V.S.A. § 752, the court may award either rehabilitative or permanent maintenance if it first determines that the spouse seeking maintenance meets certain criteria.* Then, it may order maintenance

---

* 15 V.S.A. § 752(a) provides:

(a) In an action under this chapter, the court may order either spouse to make maintenance payments, either rehabilitative or permanent in nature, to the other spouse if it finds that the spouse seeking maintenance:

in such amounts and for such periods of time as the court deems just, after considering all relevant factors including, but not limited to:

(1) the financial resources of the party seeking maintenance, the property apportioned to the party, the party's ability to meet his or her needs independently, and the extent to which a provision for support of a child living with the party contains a sum for that party as custodian;

(2) the time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of each spouse;

(6) the ability of the spouse from whom maintenance is sought to meet his or her reasonable needs while meeting those of the spouse seeking maintenance; and

(7) inflation with relation to the cost of living.

15 V.S.A. § 752(b).

█ Although the statute does not define "rehabilitative" or "permanent," by mentioning both, it recognizes a distinction between the two. The statute gives courts discretion to order maintenance "for such periods of time as the court deems just, after considering . . . the time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment . . . ." 15 V.S.A. § 752(b). We think that this implies a definite time duration for rehabilitative maintenance. Therefore, when rehabilitative maintenance is appropriate in light of the circumstances and the factors listed in § 752(b), the court must impose a time limit. Admittedly it may be difficult for the trial court to predict the exact length of time required for the recipient to become self-supporting; however, if the recipient has not achieved self-sufficiency during the time pe-

(1) lacks sufficient income, property, or both, including property apportioned in accordance with section 751, to provide for his or her reasonable needs, and

(2) is unable to support himself or herself through appropriate employment at the standard of living established during the marriage or is the custodian of a child of the parties.

riod established, he or she may petition the court for modification of the order pursuant to 15 V.S.A. § 758.

In this case, the order appears more akin to a permanent maintenance order despite its use of the term rehabilitative. Because of this uncertainty, we remand for clarification of whether the award was permanent or rehabilitative.

*Reversed and remanded for further proceedings consistent with this opinion.*