2006 VT 62

## In re ESTATE OF Gregory G. PRICE

[904 A.2d 1196]

No. 05-173

¶ 1. July 7, 2006. Plaintiff Susan Teaford appeals from the superior court's order granting summary judgment in favor of defendant Lucille Price, thereby allowing defendant to retain $50,000 she received as beneficiary of a life insurance policy of decedent Gregory Price.[1] The order on appeal reversed the decision of the probate court, which had allowed plaintiff's claim to the full amount of the insurance proceeds. We agree with the result reached by the probate court and reverse the decision of the superior court.

¶ 2. Plaintiff married decedent in 1976. They had two children: Andrew, born on September 5, 1980, and Emily, born on February 14, 1985. Emily has a developmental disability and cannot live independently. Plaintiff is her guardian.

¶ 3. Plaintiff and decedent were divorced in Virginia in 1988. Paragraph 8(d) of the separation agreement governing the divorce required that:

> The Husband shall maintain a policy of life insurance insuring him and shall name the children of the parties as beneficiary and shall keep such policy in full force and effect until his obligation herein to support the children of the parties shall cease. The amount of said insurance shall be no less than One Hundred Thousand Dollars.

This provision was added in its final form through an addendum which also modified decedent's child support obligation as follows:

> The Husband agrees to pay to the Wife for the support, maintenance, and education of each of the children ... the sum of Two Hundred Fifty Dollars ($250.00), per month, ... commencing with April 1, 1988 and continuing until each of said children attains the age of eighteen (18) years, or sooner becomes fully employed, married, or otherwise becomes fully emancipated.

¶ 4. In 1991, decedent married defendant, and the couple moved to Vermont. After Andrew reached majority in 1998, decedent changed the beneficiary designation of the life insurance policy, making plaintiff (as Emily's guardian) and defendant co-beneficiaries. Decedent did not attempt to modify the separation agreement between him and plaintiff, nor did he seek court approval of the new beneficiary designation.

¶ 5. On January 21, 2003, decedent and defendant divorced. Decedent died on February 5, 2003, during the nisi period. Emily had not yet attained majority at the time of decedent's death.

¶ 6. Defendant was appointed executrix of decedent's estate. After the insurance proceeds were paid as per the changed beneficiary designation — $50,000 to plaintiff as Emily's guardian and $50,000 to defendant — plaintiff presented a timely claim to the estate on Emily's behalf for the $50,000 paid to defendant. Defendant, as executrix, disallowed the claim, and plaintiff appealed to the probate court. The probate court allowed the claim, directing defendant to

---

[1] Plaintiff was married to decedent from 1976 to 1988, and defendant was married to decedent from approximately 1991 to 2003.

pay plaintiff $50,000. The court held that the separation agreement between decedent and plaintiff provided for neither division of the policy proceeds nor a unilateral change of beneficiaries. It interpreted the agreement as requiring decedent to maintain the beneficiary designations called for in the agreement until his support obligation as to both children expired, or until decedent obtained a court order allowing a change.

¶ 7. Defendant appealed the probate court's ruling to the superior court. Both parties moved for summary judgment. The superior court reversed the probate court ruling and granted summary judgment for defendant, allowing her to keep the $50,000 she had received as a beneficiary of the life insurance policy. Noting that the separation agreement's requirement to maintain the life insurance policy had a termination date — namely, the endpoint of decedent's obligation to support the children — the court concluded that "the parties did not intend to make this benefit a property settlement but rather intended it as a means to protect the children's support." The court went on to opine that when Andrew reached majority "any right he might have had to the life insurance money ended." At that point, the court held, decedent was free to name another beneficiary.

¶ 8. On appeal, plaintiff argues that a noncustodial parent cannot unilaterally reduce a support payment when each child of the marriage reaches majority, absent a court order. Therefore, because the life insurance provision at issue was intended to secure decedent's support obligation for the children, he could not name a new beneficiary without a court order.[2] Defendant counters that the in-

surance provision, like the child support provision, was divisible by its terms and thus terminated as to each child when the support obligation to that child terminated. Defendant also contends that Emily received the full benefit of the bargain — decedent made all of his support payments on her behalf, and she received the $50,000 due under the insurance provision.

¶ 9. This Court reviews a summary judgment ruling de novo, employing the same standard applied by the trial court. *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 14, 177 Vt. 421, 869 A.2d 82. To prevail on a motion for summary judgment, the moving party must show there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). We agree with the probate court that the plain language of the separation agreement between decedent and plaintiff barred decedent from unilaterally altering the beneficiary designation without court approval. Thus, we reverse the superior court's order granting summary judgment to defendant and hold that plaintiff is entitled to judgment as a matter of law.

¶ 10. As the superior court correctly recognized, plaintiff and decedent were free to negotiate the terms of the dissolution of their marriage, and they are bound by the plain meaning of the words they chose. *Duke v. Duke*, 140 Vt. 543, 546, 442 A.2d 460, 462 (1982). The mean-

---

[2] Plaintiff also contends that the divorce decree between defendant and decedent released any interest defendant may have had as a beneficiary. It is not clear that the release argument was presented to the probate court, but the parties did raise the issue in their summary judgment motion papers filed with the superior court. Neither court addressed the issue, and we decline to address it in light of our decision on the issue of the beneficiary designation.

ing of a contractual term "cannot exist in a vacuum" and must be assessed in light of "the circumstances surrounding the making of the agreement" while viewing the agreement "in its entirety." *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 578, 580, 556 A.2d 81, 84-85 (1988).

¶ 11. The separation agreement's life insurance provision required decedent to keep an insurance policy of at least $100,000 "in full force and effect until his obligation herein to support the children ... shall cease." Because plaintiff and decedent elected to frame that provision in terms of decedent's "obligation herein to support *the children*" (emphasis added), they agreed that decedent would maintain at least $100,000 of insurance coverage for the children's benefit until *both* children attained majority or otherwise became emancipated. Thus, the superior court's holding that Andrew's right to a share of the insurance proceeds terminated and reverted back to decedent when Andrew reached majority subverts the intention of plaintiff and decedent as reflected in the plain language of their separation agreement.

¶ 12. Allowing decedent to designate defendant as a beneficiary would also run counter to this Court's refusal to allow unilateral modifications of support obligations. In *Morancy v. Morancy*, we held that a party cannot unilaterally terminate an unallocated support award and must seek court approval to reduce the payment when one child attains majority. 173 Vt. 609, 611, 800 A.2d 435, 437 (2001) (mem.). The same rule applies to the life insurance provision at issue here because it conferred an unallocated benefit on the children as a group and because, as defendant recognizes, it was intended to provide a source of funds for decedent's support obligation in the event he died while support payments were still due.

¶ 13. We are mindful that courts in other jurisdictions have held otherwise. For example, in *Riser v. Riser*, the court

had to interpret a divorce decree that required the father to maintain his children as irrevocable beneficiaries of two life insurance policies "until such time as said children shall have attained the age of majority or become otherwise emancipated." 501 P.2d 1069, 1070 (Wash. Ct. App. 1972). The father remarried after the divorce and changed the beneficiaries on each policy from his son and daughter, share and share alike, to his new wife. At the time of the father's death, the son was emancipated and the daughter was not. The court held that the father properly redesignated his second wife as a beneficiary as to the son's share of the insurance policy, for two reasons. First, the life insurance provision was not merely to secure the support payments, but was in addition to them, and the father had the right to place limitations on this additional obligation. *Id.* at 1072. Second, the father's intention was to treat each child equally, as evidenced by the share-and-share-alike beneficiary designation and the absence of evidence to the contrary. *Id.* Thus, in order to give effect to the father's intent, the court held that the son's interest reverted to the father when the son attained majority so that the father was free to redesignate the son's share. *Id.* Accord *In re Estate of Comiskey*, 465 N.E.2d 653, 658 (Ill. App. Ct. 1984) (following *Riser* and holding that where divorce decree obligated father to name the parties' two minor children as irrevocable beneficiaries of certain insurance policies during their minority, child's interest in policies lapsed and reverted to father when child reached majority so that father could designate a new beneficiary as to that child's interest); *In re Estate of Monreal*, 375 N.W.2d 329, 332 (Mich. 1985) (holding that provision requiring maintenance of life insurance policies with children as beneficiaries until husband's support obligation was completed was intended to benefit only minor children).

¶ 14. We decline to follow the *Riser* approach for two reasons. First, unlike *Riser*, the parties and the superior court here characterize the life insurance provision as intended to secure decedent's support payments, not as an additional obligation. Thus, unlike the father in *Riser*, decedent was not free to place limitations on his obligation to fulfill the life insurance provision. Second, even assuming that Andrew's beneficiary interest in the life insurance policy lapsed and reverted to decedent when Andrew attained majority, the unallocated nature of the benefit conferred on the children by the life insurance provision, filtered through our holding in *Morancy*, precludes decedent from re-allocating that interest without court approval. In other words, because the life insurance provision allocated a benefit to the children as a group, as long as Emily remained a minor, decedent was required to seek court approval of any re-allocation of the beneficiary designation. In light of his failure to do so, we agree with the ruling of the probate court.

*The order of the superior court is reversed and plaintiff's motion for summary judgment is granted.*